STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 04-1134


STATE OF LOUISIANA

VERSUS

KEVIN JAMES PITRE


**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 65996 FB
HONORABLE THOMAS F. FUSELIER, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Billy Howard Ezell, and James T. Genovese, Judges.

**CONVICTION SENTENCES AFFIRMED; REMANDED FOR DISPOSITION OF SEXUAL BATTERY CHARGE AND TO VACATE ORIGINALLY IMPOSED SENTENCES.**

**Christopher Brent Coreil**
**District Attorney Thirteenth Judicial District Court**
**P. O. Drawer 780**
**Ville Platte, LA 70586**
**(337) 363-3438**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Laura Marie Pavy**
**Louisiana Appellate Project**
**5505 Coliseum Street**
**New Orleans, LA 70115**
**(504) 895-1942**
**Counsel for Defendant/Appellant:**
**Kevin James Pitre**

**Kevin James Pitre**
**Pine Prairie Detention Center**
**P. O. Box 650**
**Pine Prairie, LA 70576-0650**

**EZELL, JUDGE**.

The Defendant, Kevin Pitre, was charged in an indictment on July 22, 2003, with three counts of carnal knowledge of a juvenile in violation of La.R.S. 14:80, and one count of sexual battery, in violation of La.R.S. 14:43.1. The Defendant entered a plea of not guilty to all charges on August 14, 2003. An amended indictment was filed on January 15, 2004, wherein the initials of the victim(s) were changed. On the same date, the Defendant entered a plea of not guilty to all charges.

Trial on the three counts of carnal knowledge of a juvenile commenced January 20, 2004, and the jury returned a verdict of guilty on each charge on January 21, 2004. On February 9, 2004, the Defendant filed a motion for new trial. After a hearing held on March 18, 2004, the motion was denied.

On April 29, 2004, the Defendant was ordered to serve seven years at hard labor on each count to run consecutively, without benefit of diminution of sentence for good behavior. A motion to reconsider sentence was filed on May 4, 2004, and denied on July 1, 2004.

A motion for appeal was filed on June 11, 2004. Additionally, a bill of information charging the Defendant as a habitual offender was filed on June 22, 2004.

The Defendant is before this court asserting three assignments of error including errors patent.

## FACTS

The Defendant had sexual intercourse with the victim, B.F., on three separate occasions.[1]

_____

[1]The initials of the victim and those of her family members will be used in accordance with La.R.S. 46:1844(W).

1

## FIRST ERROR PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, the court finds there are two errors patent.

This court finds that one of the counts charged in the bill of indictment has not been properly disposed of. Louisiana Code of Criminal Procedure Article 819 provides: "If there is more than one count in an indictment, the jury must find a verdict as to each count, unless it cannot agree on a verdict as to a count." The Defendant was charged by an amended bill of indictment with three counts of carnal knowledge of a juvenile and one count of sexual battery. According to the minutes of the date of the amendment, the State informed the court that it would proceed to trial on counts one, two, and three. Count four was not mentioned. At trial, the clerk read only counts one, two, and three to the jury, and the jury returned verdicts as to those counts only. Pursuant to the court's information request, the Evangeline Parish Clerk of Court's Office submitted an affidavit stating that there has been no disposition of count four, sexual battery. This court addressed a similar issue in *State v. Davis*, 614 So.2d 270 (La.App. 3 Cir. 1993), *writ granted*, 93-599 (La. 10/29/93), 626 So.2d 1180, *reversed on other grounds*, 93-599 (La. 4/11/94), 634 So.2d 1168. The court stated:

> The record indicates a possible error patent regarding the number of verdicts returned by the jury. Defendant was indicted on three counts of malfeasance in office and one count of injuring public records, but a verdict was returned only as to one count of malfeasance in office. A motion to sever offenses was filed by the State on February 14, 1991, with the State arguing that count two should be tried separately. On May 13, 1991, the court ordered the defendant to show cause on May 15, 1991 as to why the motion should not be granted. The court minutes of May 15, 1991 failed to show whether the court ruled on this motion. At trial, only count two was read to the jury. The record does not show the disposition of the other counts.

2

La.C. Cr.P. art. 819 provides:

> If there is more than one count in an indictment, the jury must find a verdict as to each count, unless it cannot agree on a verdict as to a count.

> We will therefore remand the case for a determination of whether the motion to sever was granted and, if not, for a proper disposition of the remaining charges.

*Id.* at 275.

Unlike the situation in *Davis*, there was no motion to sever filed by the State. Accordingly, this court will remand the present case for a proper disposition of the sexual battery charge. *See also State v. James*, 99-1858 (La.App. 3 Cir. 5/3/00), 761 So.2d 125, *writ denied*, 00-1595 (La. 3/23/01), 787 So.2d 1010 and *State v. Cash*, 03-853 (La.App. 3 Cir. 12/10/03), 861 So.2d 851, *writ denied*, 04-27 (La. 4/30/04), 872 So.2d 472, *writ denied*, 04-232 (La. 5/7/04), 872 So.2d 1080, where this court remanded for disposition of charges.

## SECOND ERROR PATENT

The Defendant's habitual offender adjudication and sentence were not reviewed because the habitual offender hearing had not yet been held. On January 7, 2005, this court received a supplemental record containing a minute entry of the Defendant's habitual offender hearing held on December 21, 2004. The Defendant did not object to the habitual offender sentence imposed and has not filed a notice appealing the habitual offender sentence. Since the time limits for filing a motion to reconsider sentence and a notice of appeal have not yet run, it is not certain whether or not the Defendant will seek an appeal of his habitual offender sentence. Because the habitual offender bill of information was filed in the docket number presently pending before this court, we have reviewed the habitual offender proceedings for errors patent. We have received the habitual offender bill of

3

information and the minutes of the habitual offender hearing. After reviewing the minutes, we find the transcript of the habitual offender adjudication is not needed. After reviewing that record, the court submits there is one error patent and one issue worth noting.

First, nothing in the record indicates the Defendant was advised of his right to remain silent and his right to a hearing on his habitual offender adjudication. However, we find that the failure to so advise the Defendant is harmless because a hearing was held, at which the Defendant was adjudicated a third habitual offender. *State v. Beverly*, 03-1348 (La.App. 3 Cir. 3/3/04), 867 So.2d 107. *See also State v. Wilson*, 02-700 (La.App. 3 Cir. 12/18/02), 833 So.2d 560, *writ denied*, 03-216 (La. 5/2/03), 842 So.2d 1100, *cert. denied*, 540 U.S. 952, 157 L.Ed.2d 285, 124 S.Ct. 393 (2003) (finding the failure to advise of right to a hearing was harmless because a hearing was held). We further note that although the minutes indicate the Defendant testified, nothing in the minutes indicates the Defendant acknowledged his status as a habitual offender.

Additionally, the court notes that the minutes of the habitual offender adjudication do not indicate the trial court vacated the originally imposed sentences of seven years on each count before imposing the habitual offender sentences. Louisiana Revised Statute 15:529.1(D)(3) requires the trial court to vacate the previously imposed sentence prior to imposing a habitual offender sentence. In *State v. Mayer*, 99-3124 (La. 3/31/00), 760 So.2d 309, however, the supreme court found that vacation of the habitual offender sentence was not necessary where the transcript failed to reflect the trial court vacated the previously imposed sentence before imposing the habitual offender sentence. The supreme court reasoned that the substantial rights of the defendant were protected since the commitment/minute entry

4

"reflect[ed] that the trial judge vacated the defendant's original sentence and thereby eliminated any possible confusion as to the terms of the defendant's confinement . . . ." *Id.* at 310.

The present case is distinguishable since the minute entry does not indicate that the trial court vacated the originally imposed sentences before sentencing the Defendant as a habitual offender. To eliminate any possible confusion as to the terms of the Defendant's confinement, this court will order the trial court to vacate the originally imposed sentences of seven years on each count. *See State v. Mayer*, 99-3124 (La.App. 3 Cir. 3/31/00), 760 So.2d 309 (*citing State ex rel. Haisch v. State*, 575 So2d. 816 (La.1991)).[2]

### ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the Defendant contends the evidence was insufficient to support the verdicts as no evidence was offered regarding the marital status of the victim. Louisiana Revised Statute 14:80 requires that the victim of felony carnal knowledge of a juvenile not be the spouse of the offender.

The Defendant contends there was no direct evidence regarding the marital status of the victim and that fact was conceded by the State at a hearing on the Defendant's motion for new trial. In its brief to this court, the State concedes that no witness was specifically asked whether or not the victim was the Defendant's spouse at the time of the offenses. However, the State argues there was sufficient circumstantial evidence from which the jury could infer that the victim was not the spouse of the Defendant.

---

[2]*But see State v. Boss*, 03-133 (La.App. 5 Cir. 5/28/03), 848 So.2d 75, *writ denied*, 03-1968 (La. 5/14/04), 872 So.2d 508, where the fifth circuit found *Mayer* distinguishable and should not be followed where neither the commitment/minute entry nor the transcript reflect that the original sentence was vacated prior to imposition of the habitual offender sentence.

When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Neal*, 00-0674, (La.6/29/01) 796 So.2d 649, 657 (citing *State v. Captville*, 448 So.2d 676, 678 (La.1984)).

When circumstantial evidence is used to prove the commission of the offense, La.R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *Neal*, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under *Jackson* to prove guilt beyond a reasonable doubt to a rational jury. *Id.* (citing *State v. Rosiere*, 488 So.2d 965, 968 (La.1986)).

*State v. Robinson*, 02-1869, p. 9 (La. 4/14/04), 874 So.2d 66, 74-75.

The offenses at issue occurred in the Spring of 2003. Trial of this matter was held on January 20 and 21, 2004. The parties stipulated that the Defendant was twenty-eight years old at the time of trial, his date of birth being September 19, 1975. Accordingly, he would have been twenty-seven years old at the time of the offenses. B.F. testified that she was fourteen years old at the time of trial, her birthday being on the twenty-eighth of June. Accordingly, she would have been thirteen years old at the time of the offenses.

B.F. lived with her father and sister at the time of the offenses and was in seventh grade. B.F. first met the Defendant at a store in Mamou during the Christmas season prior to the offenses. She testified that at that time, the Defendant "stopped by me and say, hi [B.], and I was like, how you know my name." B.F. next encountered the Defendant at the police department in Mamou in the Spring. She was at the police department because she had run away from home, and she was there to see Chateuse Richard, a juvenile officer and the Defendant's girlfriend. Approximately three days later, B.F. went riding with the Defendant on a dirt road in

6

Redell, Louisiana. Additionally, on Mother's Day, B.F. was walking with her sister when she saw the Defendant drive by. At that time, she ran and jumped into the Defendant's vehicle and the two drove toward Chataignier.

B.F. testified that she and the Defendant had sex on three occasions; once on a dirt road in Redell, once at a motel, and once on a road to Chataignier. B.F. testified that after she found out the Defendant was dating Chateuse Richard she did not have sex with him again.

At trial, Chateuse Richard testified that the Defendant was her boyfriend from March of 2001 to August of 2002. She further testified that she was not dating the Defendant in May of 2003, but he was dropped off at her house on Mother's Day.

The Defendant cites *State v. La Borde*, 234 La. 28, 99 So.2d at 12 (1958), *overruled in part, by State v. Gatlin*, 241 La. 321, 129 So.2d 4 (1961), in support of his argument and contends there is less evidence in the case at bar than in *State v. La Borde*. In *La Borde*, 99 So.2d 11,12, the defendant was charged with carnal knowledge of a juvenile, in that "he, being over the age of 17 years, did feloniously have sexual intercourse with an unmarried female, over the age of 12 years but under the age of 17, with her consent." On appeal, the defendant argued that his motion for new trial was improperly denied contending that the state failed to prove the female was unmarried at the time of the offense. The state asserted there was no direct testimony offered to establish that the female was single; however, the state argued there was some testimony elicited from which the jury was able to "deduce" that she was unmarried. The evidence relied on by the state was testimony from the female and her family that on several occasions the defendant expressed a desire to marry the female and prevailed upon her mother to consent to the marriage. The court held that

7

the state "utterly failed" to present any evidence in relation to the female's marital status and made the following comments in its rulings:

> The fact that appellant offered to marry the girl does not confer upon the jury the right to infer that she was unmarried at the time of the alleged unlawful act. Indeed, the evidence now relied on by the prosecution was unquestionably elicited and was admissible only for the purpose of showing appellant's efforts to evade prosecution; it had not even a remote bearing on the marital status of the young girl and is not now cognizable as a substitute for proof of an essential element of the offense.

*Id*. at 12-13. The court went on to state that affirmative proof of marital status must be adduced.

The State directs this court's attention to Justice Hamiter's dissent in *La Borde*, 99 So.2d 11, wherein he indicated the issue presented in the defendant's motion for new trial was in fact a question of sufficiency of the evidence. Justice Hamiter found there was circumstantial evidence warranting the jury's conclusion that the victim was unmarried including the fact that she was fourteen years old, attending school, and living with her parents, and the defendant expressed a desire to marry her.

In addition to *La Borde*, the State cites *State v. Dixon*, 471 So.2d 282 (La.App. 4 Cir. 1985) and *State v. Williams*, 02-1188 (La.App. 5 Cir. 4/8/03), 846 So.2d 22, in support of its argument that sufficient circumstantial evidence was present to prove that B.F. was not the Defendant's spouse. In *Dixon*, 471 So.2d 282, the defendant was convicted of carnal knowledge of a juvenile. The trial court denied the defendant's motion for new trial indicating that although the state never asked the victim whether she was unmarried, there was sufficient circumstances from which the jury could conclude she was unmarried, including her child-like appearance at trial, her attendance in the ninth grade, she "went to the *child* protection agency," she lived with her mother and siblings, and the medical report referred to the victim as single. *Id*. at 284. The defendant in *Dixon* cited *La Borde*, 99 So.2d 11, and argued that the

8

state failed to prove the victim was unmarried. The court held that *La Borde* was distinguishable inasmuch as the jury in *Dixon* was able to see a medical report that referred to the victim as single and no contradictory evidence was elicited. In *Williams*, 846 So.2d 22, the defendant was convicted of obscenity by exposing his genitals to a juvenile. As an element of the offense, the state was required to prove the victim was unmarried. The defendant argued that the state failed to prove this element of the offense. The court noted there was no direct evidence that the victim was unmarried, but went on to conclude that there was sufficient circumstantial evidence to prove the disputed element. The victim testified at trial that she was thirteen years old and a student at middle school. Additionally, after the incident occurred, she went home where her sister helped her phone her mother and the police, and her mother accompanied her to view mug shots. No testimony indicated the victim was assisted by her husband. The court found that it could be reasonably inferred that the victim was not married.

In addition to the above cited cases, there is also *State v. Wells*, 429 So.2d 502 (La.App. 3 Cir.), *writ denied*, 437 So.2d 1136 (La.1983). Wells was convicted of forcible rape. On appeal, the defendant argued that the state failed to prove the victim and the defendant were not married.[3] The court noted that the state failed to ask the victim whether she was married to the defendant. The court held that "[t]he existence or non-existence of a marital relationship between the defendant and the victim must be based on all the facts presented, rather than on the lack of a single question." *Id.* at 506. The court concluded that after viewing the record the state proved the

---

[3]At the time of the offense, rape was defined as "the act of anal or vaginal sexual intercourse with a male or female person who is not the spouse of the offender, committed without the person's lawful consent." La.R.S. 14:41.

defendant and the victim were not married at the time of the offense. The court noted that the transcript clearly indicated that the victim and the defendant were not dating, they had different last names, the victim had a boyfriend other than the defendant, the victim was living with her boyfriend's parents, and she had borne a child with a man other than the defendant.

Although *La Borde*, 99 So.2d 11, indicates that marital status may not be inferred, the third, fourth, and fifth circuits have upheld convictions where circumstantial evidence was used to prove the victim was not married to the offender. Accordingly, we find circumstantial evidence in this case can be used to determine whether the victim was married to the Defendant at the time the offenses at issue occurred.

At the time of the offenses, B.F. was thirteen years old, was in seventh grade, and lived with her father. B.F.'s sexual relationship with the Defendant began after she encountered him while she was at the police department because she had run away from home. She and the Defendant had sex on only three occasions, and this took place in a car and at a hotel. Additionally, B.F.'s testimony indicates that she ended her relationship with the Defendant when she found out he was dating Chateuse Richard. Based on this evidence, we find that a rational trier of fact could have concluded that B.F. was not married to the Defendant at the time of the offenses. Accordingly, this assignment of error lacks merit.

### ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the Defendant contends the trial court imposed excessive sentences.

The sentences which Defendant alleges are excessive will be was set aside.[4]

On December 21, 2004, the Defendant was adjudicated a habitual offender and sentenced to life imprisonment on each count of carnal knowledge of a juvenile, to run concurrently with each other, and to be served without benefit of probation, parole, or suspension of sentence. Inasmuch as the Defendant was adjudicated a habitual offender on each count, and the sentence Defendant complains of are no longer valid, this assignment of error is moot.

## RECOMMENDATION

The Defendant's convictions and sentences are affirmed. However, the case is remanded for a proper disposition of the sexual battery charge. To eliminate any possible confusion as to the terms of the Defendant's confinement, this court will, as required by La.R.S. 15:529.1(D)(3) order the trial court to vacate the originally imposed sentences of seven years on each count.

**CONVICTION SENTENCES AFFIRMED; REMANDED FOR DISPOSITION OF SEXUAL BATTERY CHARGE AND TO VACATE ORIGINALLY IMPOSED SENTENCES.**

---

[4]See Error Patent discussion on Page 3.

11